[Cite as *State v. Pendleton*, 2018-Ohio-3199.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

STATE OF OHIO                                            :
                                                        :
    *Plaintiff-Appellee/Cross-*     :     Appellate Case Nos. 2017-CA-9 and
    *Appellant*                     :     2017-CA-17
                                                        :
v.                                                      :     Trial Court Case No. 2016-CR-517
                                                        :
KENNY PENDLETON                                         :     (Criminal Appeal from
                                                        :     Common Pleas Court)
                                                        :
    *Defendant-Appellant/Cross-*    :
    *Appellee*

. . . . . . . . . .

O P I N I O N

Rendered on the 10th day of August, 2018.

. . . . . . . . . .

D. ANDREW WILSON, Atty. Reg. No. 0073767, ANDREW P. PICKERING, Atty. Reg.
No. 0068770, and RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Clark County
Prosecutor's Office, 50 East Columbia Street, Fourth Floor, Springfield, Ohio 45502
    Attorneys for Plaintiff-Appellee/Cross-Appellant

SAMUEL H. SHAMANSKY, Atty. Reg. No. 0030772 and DONALD L. REGENSBURGER,
Atty. Reg. No. 0086958, 523 South Third Street, Columbus, Ohio 43215
    Attorneys for Defendant-Appellant/Cross-Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, Kenny Pendleton, appeals from his convictions on three counts of trafficking in drugs, three counts of possession of drugs and six firearm specifications. Seeking reversal of the convictions, Pendleton argues that the indictment against him did not fully comply with Crim.R. 7(B); that the verdicts were not entirely justified by the evidence; that the trial court erred by merging some, but not all, of the allied offenses for which he was convicted; that the trial court did not properly instruct the jury; and that his defense counsel failed to render effective assistance.

{¶ 2} We find that the indictment against Pendleton met the requirement that it contain a statement charging him with a cognizable violation of the law, in compliance with Crim.R. 7(B). We find, as well, that the jury received evidence enough to justify its verdicts, that the trial court correctly determined which of Pendleton's offenses should be merged for sentencing, that the trial court's instructions to the jury were not prejudicially imprecise, and that Pendleton's attorney provided adequate representation. Therefore, Pendleton's convictions are affirmed.

{¶ 3} The State raises a single cross-assignment of error challenging the trial court's ruling of January 19, 2017, by which the court sustained Pendleton's motion for acquittal as it related to the charge of having a weapon while under disability. Because the trial court misconstrued the State's burden of proof, we sustain the State's cross-assignment of error, although our disposition of this issue has no effect on Pendleton's acquittal.

## I. Facts and Procedural History

{¶ 4} In conjunction with other agencies, the Springfield Police Division began an

investigation of Pendleton in November 2015, prompted by suspicions that he was engaged in drug trafficking. Trial Tr. 128:8-128:13, 129:18-130:14 and 423:18-425:3, Jan. 18-20, 2017. Among other things, the investigation included surveillance of two Springfield residences: 803 Farlow Street and 1804 Mound Street. *Id.* at 202:15-21 and 240:21-243:10.

{¶ 5} On January 4, 2016, officers involved with the investigation were instructed to detain Pendleton for a *Terry* stop. *See id.* at 129:6-130:7. A records check revealed that Pendleton did not have a valid driver's license, so one of the officers located Pendleton's vehicle in a parking lot on Commerce Road and waited nearby for him to leave. *Id.* at 130:1-130:7. When Pendleton drove away, accompanied by two passengers, the officer followed and stopped him on North Bechtle Avenue. *Id.* at 130:8-131:4.

{¶ 6} The officer asked Pendleton and his passengers whether they had anything illegal in the vehicle, to which one of the passengers responded by surrendering a bag of marijuana. *Id.* at 131:18-132:13. After another officer responded to the scene to provide assistance, Pendleton was formally placed under arrest, and the vehicle was searched. *Id.* at 131:18-132:24 and 358:16-359:9. The officers discovered small fragments of crack cocaine on the vehicle's floor and seats, and they confiscated two cellular telephones they found in the center console. *Id.* at 132:25-133:14. A search of Pendleton's person incident to his arrest yielded $3,062.00 in cash. *Id.* at 133:15-133:23 and 135:19-136:3. In addition, the officers confiscated a cellular telephone from each of the passengers. *Id.* at 133:7-133:14.

{¶ 7} One of the two cellular telephones found in the center console appeared to

belong to Pendleton; data obtained from the phone linked the device to a Facebook account for "Kenny Pendleton" and to a Google email account for "KennyP12125." *Id.* at 133:7-133:9, 160:23-163:3, 186:7-187:6 and 226:3-232:13. Further, a Springfield Police Division officer testified that he recognized Pendleton's voice in a brief video recording stored in the phone's memory, noting that certain objects found during the subsequent search of 803 Farlow Street were identical to objects visible in the background of the recording. *Id.* at 211:8-211:17 and 232:5-232:13.

{¶ 8} Investigators executed search warrants for 803 Farlow Street and 1804 Mound Street that same day. *Id.* at 146:4-147:12, 202:17-204:16 and 240:21-242:6. At the latter, the investigators recovered a photograph of Pendleton with another person, along with a piece of paper with "803 Farlow" and a utility account number written on it. *See id.* at 342:21-345:10 and 350:18-353:14. At the former, the investigators recovered several items on which residual traces of controlled substances were later detected, including two digital scales and a tempered glass measuring cup. *Id.* at 206:11-206:21, 253:3-253:15, 299:7-299:25, 333:4-334:9 and 336:11-337:25. Inside a box hidden beneath a ventilation register in a bedroom, the investigators found a smaller box of sandwich bags; two handguns; an empty ammunition magazine; a full ammunition magazine; a third digital scale; 49.67 grams of a substance containing cocaine, fentanyl and heroin; 63.07 grams of a substance containing cocaine; and 83.95 grams of a substance containing fentanyl and heroin.[1] *Id.* at 148:25-149:12, 207:12-210:23, 211:8-216:23, 219:22-226:2, 324:4-328:15 and 330:21-332:10.

---

[1] The cocaine was divided into several bags. *See* Trial Tr. 330:21-336:10. The mixture of fentanyl and heroin was divided into two quantities, one weighing 83.17 grams and the other weighing 0.78 grams. *Id.* at 328:2-328:15 and 331:17-332:6.

{¶ 9} The investigators also recovered evidence from 803 Farlow Street indicating that Pendleton resided there, including a prescription bottle and hospital records bearing Pendleton's name, and pictures of Pendleton's children. *Id.* at 149:6-149:17, 151:10-153:19, 155:8-156:1 and 209:3-210:12. As well, the investigators found a digital video recording system connected to externally mounted cameras. *Id.* at 164:20-166:19, 176:21-178:19, 252:12-252:21, 384:6-385:18 and 387:22-399:10. Recordings extracted from the device's memory showed Pendleton engaging in a variety of quotidian activities, such as letting out his dogs and bringing groceries into the house. *Id.*

{¶ 10} On October 24, 2016, a Clark County grand jury issued an indictment charging Pendleton with: Count 1, trafficking in heroin, a first degree felony pursuant to R.C. 2925.03(A)(2) and (C)(6)(f)-(g); Count 2, possession of heroin, a first degree felony pursuant to R.C. 2925.11(A) and (C)(6)(e)-(f); Count 3, trafficking in cocaine, a fifth degree felony pursuant to R.C. 2925.03(A)(2) and (C)(4)(a); Count 4, possession of cocaine, a fifth degree felony pursuant to R.C. 2925.11(A) and (C)(4)(a); Count 5, aggravated trafficking in drugs, a second degree felony pursuant to R.C. 2925.03(A)(2) and (C)(1)(d); Count 6, aggravated possession of drugs, a second degree felony pursuant to R.C. 2925.11(A) and (C)(1)(c); and Count 7, having a weapon while under disability, a third degree felony pursuant to R.C. 2923.13(A)(3) and (B).[2] Firearm specifications were

---

[2] Originally, Counts 3 and 4 of the indictment charged Pendleton with the first-degree felony offenses of trafficking in cocaine in an amount equal to or greater than 100 grams, and possession of cocaine in an amount equal to or greater than 100 grams. R.C. 2925.03(C)(4)(g) and 2925.11(C)(4)(f). The State moved to amend Counts 3 and 4 in the wake of the Ohio Supreme Court's decision in *State v. Gonzales*, 150 Ohio St.3d 261, 2016-Ohio-8319, 81 N.E.3d 405, and the trial court sustained the motion in its decision of January 17, 2017. As amended, Counts 3 and 4 charged Pendleton with fifth-degree felony offenses and did not refer to a specific amount of cocaine. The Court subsequently vacated its initial decision in the *Gonzales* case. *State v. Gonzales*, 150

attached to Counts 1 through 6.

{¶ 11} At trial, Pendleton moved for acquittal once the State rested its case. The trial court overruled the motion on Counts 1 through 6, though it sustained the motion on Count 7, the charge of having a weapon while under disability. Trial Tr. 469:3-469:5 and 470:12-471:5. According to the court, R.C. 2923.13 imposed a burden on the State not only to prove that Pendleton had "a prior conviction * * * plac[ing] him under a [legal] disability," but also to prove the negative proposition that Pendleton had not successfully applied for the lifting of the disability pursuant to R.C. 2923.14. *See id.* at 470:12-471:5. The court sustained Pendleton's motion on Count 7 because it found that the State did not prove that the disability had not been lifted. *Id.*

{¶ 12} On January 20, 2017, following roughly 90 minutes of deliberations, the jury returned verdicts of guilty on Counts 1 through 6, including the firearm specification attached to each count. The trial court merged Counts 1 and 2, Counts 3 and 4, Counts 5 and 6, and all of the firearm specifications for purposes of sentencing, and imposed consecutive terms of imprisonment of 11 years on Count 1; one year on Count 3; eight years on Count 5; and one year for the merged firearm specifications, resulting in an aggregate sentence of 21 years. Pendleton timely filed a notice of appeal on January 31, 2017.

## II. Analysis

{¶ 13} For his first assignment of error, Pendleton contends that:

APPELLANT'S INDICTMENT WAS FATALLY FLAWED FOR

FAILURE TO ALLEGE THAT HE POSSESSED OR TRAFFICKED IN A

---

Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, ¶ 1-3.

PROHIBITED WEIGHT OF FENTANYL AS REQUIRED BY R.C. 2925.03(C)(1) AND R.C. 2925.11(C)(1) AND VIOLATED HIS RIGHT TO A GRAND JURY UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶ 14} The jury found Pendleton guilty of violating R.C. 2925.03(A)(2) and 2925.11(A) as charged in Counts 5 and 6 of the indictment. Both of the charges stemmed from the recovery of 133.62 grams of mixtures containing fentanyl, a Schedule II opiate, from 803 Farlow Street. R.C. 3719.41(II)(B)(9); *see* Trial Tr. 563:14-566:18. In Count 5, the indictment charged Pendleton with trafficking in "a [S]chedule II controlled substance, or a compound, mixture, preparation, or substance containing a [S]chedule II controlled substance," and in Count 6, the indictment charged him with possession of "a [S]chedule II controlled substance, or a compound, mixture, preparation, or substance containing a [S]chedule II controlled substance." Pendleton argues that Counts 5 and 6 of the indictment did not satisfy the requirements of Crim.R. 7(B) because R.C. 2925.03(A)(2) and (C)(1), and R.C. 2925.11(A) and (C)(1), apply only to fentanyl in its pure form, which is listed on Schedule II, as opposed to mixtures of fentanyl and one or more additional controlled substances, none of which are listed on the schedule. *See* Appellant's Br. 12-14.

{¶ 15} As Pendleton acknowledges, he did not raise his objection to the wording of Counts 5 and 6 of the indictment in advance of his trial. *See* Appellant's Br. 13. An objection to an indictment that is not raised prior to trial as required by Crim.R. 12(C)(2) is waived unless it constitutes plain error. *State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, ¶ 66 (2d Dist.), citing *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819

N.E.2d 215, ¶ 26. Reversal for plain error is warranted only when, "but for the error, the outcome of the trial would have been different." *Id.*, citing *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

{¶ 16} Under R.C. 2925.03(C)(1), a violation of R.C. 2925.03(A)(2) that involves "any compound, mixture, preparation or substance included in [S]chedule I or [S]chedule II" constitutes "aggravated trafficking in drugs." Similarly, a violation of R.C. 2925.11(A) that involves "a compound, mixture, preparation, or substance included in [S]chedule I or II [sic]" constitutes "aggravated possession of drugs" under R.C. 2925.11(C)(1). Pendleton maintains that both of these provisions apply only to compounds, mixtures, preparations, or substances that are themselves designated by name on Schedule I or II. *See* Appellant's Br. 13. In support of his position, he offers a comparison to the provisions of R.C. 2925.03(C)(3) and 2925.11(C)(3), which apply to marijuana "or [to] compound[s], mixture[s], preparation[s], or substance[s] containing mari[j]uana." *Id.*

{¶ 17} Pendleton makes a valid observation about the text of the statutes, but his argument falters over the meaning of the term "mixture." A mixture, "[i]n chemistry, [is] the blending of several ingredients without an alteration of the substances, each of which retains its own nature and properties," and should be "distinguished from [a] combination, in which the substances unite by chemical attraction, and, losing their distinct properties, form a compound differing in its properties from any of the ingredients." (Emphasis omitted.) *Webster's New Twentieth Century Dictionary* 1079 (1964). In other words, a mixture is merely a collection of disparate components, and the components themselves retain their individual chemical identities. Pendleton's convictions for trafficking in a mixture containing fentanyl and possession of a mixture containing fentanyl may,

consequently, be characterized with equal accuracy as convictions for trafficking in fentanyl and another substance, and for possession of fentanyl and another substance.

{¶ 18} The statutory definition of the term "bulk amount," furthermore, directly contradicts Pendleton's contention that R.C. 2925.03(C)(1) and R.C. 2925.11(C)(1) do not contemplate "enhanced penalties * * * based on the total weight of an aggregate mixture" containing a controlled substance, but instead "concern only the * * * amount of the [controlled substance] itself." Appellant's Br. 13. The definition of "bulk amount" applicable to fentanyl appears in R.C. 2925.01(D)(1)(d), which defines the term as an "amount equal to or exceeding twenty grams or five times the maximum daily dose * * * specified in a standard pharmaceutical reference manual of a compound, mixture, preparation, or substance that is or contains any amount of a [S]chedule II opiate or opium derivative." (Emphasis added.) Thus, R.C. 2925.01(D)(1)(d) does not distinguish between a quantity of pure fentanyl and an equal quantity of a mixture that contains fentanyl, nor is the reference to mixtures expressly limited to those that contain only a single controlled substance.

{¶ 19} A charge set forth in an indictment is "generally acceptable" if it incorporates "the actual language" of the relevant statute. *Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, ¶ 65. Here, the wording of Counts 5 and 6 of the indictment largely tracked the wording of R.C. 2925.03(C)(1) and 2925.11(C)(1) but deviated by referring to "a [S]chedule II controlled substance," and in the alternative to "a compound, mixture, preparation, or substance containing a [S]chedule II controlled substance," instead of referring only to a "compound, mixture, preparation, or substance" listed on Schedule II. Yet, because the individual components of a mixture remain chemically distinct, the indictment validly

charged Pendleton with trafficking in a Schedule II controlled substance and possession of a Schedule II controlled substance on the basis of the fentanyl contained within the mixtures of controlled substances recovered from 803 Mound Street.

{¶ 20} Pendleton's interpretation of R.C. 2925.03(C)(1) and 2925.11(C)(1) takes no account of the meaning of the term "mixture" or the definition of the term "bulk amount" in R.C. 2925.01(D)(1)(d). For the foregoing reasons, we find that the outcome of Pendleton's trial would not have been different had the exact language of R.C. 2925.03(C)(1) and 2925.11(C)(1) been cited in Count 5 and Count 6 of the indictment. Pendleton's first assignment of error is overruled.

{¶ 21} For his second assignment of error, Pendleton contends that:

APPELLANT WAS CONVICTED OF AGGRAVATED POSSESSION OF DRUGS AND AGGRAVATED TRAFFICKING IN DRUGS, EACH AS A FELONY OF THE SECOND DEGREE, IN THE ABSENCE OF SUFFICIENT EVIDENCE, IN VIOLATION OF HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶ 22} Again challenging his convictions on Counts 5 and 6 of the indictment, Pendleton argues that the State failed to prove that the amount of fentanyl recovered from 803 Farlow Street equaled or exceeded "twenty grams or five times the maximum daily dose * * * specified in a standard pharmaceutical reference manual." Appellant's Br. 15, citing R.C. 2925.03(C)(1)(d) and 2925.11(C)(1)(c). He acknowledges that 133.62 grams of mixtures containing fentanyl were recovered from 803 Farlow Street, but because the State did not prove "the actual [quantity] of fentanyl" included in the mixtures, he insists

that the evidence did not support his convictions for second degree felonies pursuant to R.C. 2925.03(C)(1)(d) and 2925.11(C)(1)(c).   *Id.* at 16.

{¶ 23} Sufficiency of the evidence "is the * * * standard applied to determine whether * * * the evidence [in a given case] is legally sufficient as a matter of law to support the jury['s] verdict."   *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).   On review of a challenge to a conviction based upon the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' "   *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.   Pendleton challenges only the sufficiency of the evidence establishing the bulk amount of fentanyl involved in the trafficking charge in Count 5 and the possession charge in Count 6.   Appellant's Br. 15.

{¶ 24} In relevant part, R.C. 2925.01(D)(1)(d) defines "bulk amount" as an "amount equal to or exceeding twenty grams * * * of a compound, mixture, preparation, or substance that * * * contains any amount of a [S]chedule II opiate or opium derivative." Law enforcement officers recovered two mixtures containing fentanyl, a Schedule II opiate, from 803 Farlow Street.   R.C. 3719.41(II)(B)(9); Trial Tr. 211:8-216:23, 219:22-226:2, 324:15-327:6 and 328:2-332:6.   One of the mixtures weighed 49.67 grams and contained cocaine, fentanyl and heroin, and the other mixture weighed 83.95 grams and contained fentanyl and heroin, making a combined total of 133.62 grams.   Trial Tr. 324:15-327:6 and 328:2-332:6.   Presented with this evidence, the jury found that the amount of fentanyl involved in the offenses charged in Counts 5 and 6 of the indictment

was equal to or greater than five times but less than 50 times the bulk amount (i.e. 100 or more grams but fewer than 1000 grams). *Id.* at 563:14-568:12.

{¶ 25} Under R.C. 2925.01(D)(1)(d), the jury received sufficient evidence as a matter of law to support its finding. Therefore, we find that the evidence adduced at Pendleton's trial was sufficient to support his convictions on Counts 5 and 6. Pendleton's second assignment of error is overruled.

{¶ 26} For his third assignment of error, Pendleton contends that:

THE TRIAL COURT FAILED TO MERGE APPELLANTS' [sic] CONVICTIONS DESPITE THE FACT THAT THEY WERE ALLIED OFFENSES OF SIMILAR IMPORT, IN VIOLATION OF BOTH OHIO LAW AND HIS RIGHT AGAINST DOUBLE JEOPARDY AS GUARANTEED BY THE UNITED STATES CONSTITUTION.

{¶ 27} Pendleton argues that the trial court should have merged his convictions on Counts 1, 2, 5 and 6 because his convictions for trafficking in heroin and possession of heroin on Counts 1 and 2, and his convictions for trafficking in fentanyl and possession of fentanyl on Counts 5 and 6, were based on the same two quantities of mixed substances containing both fentanyl and heroin. By treating the mixtures' fentanyl content as an adulterant for purposes of Counts 1 and 2, and by treating the mixtures' heroin content as an adulterant for purposes of Counts 5 and 6, Pendleton claims that the trial court imposed two sanctions for a single crime.[3] *See id.* at 20.

---

[3] One of the mixtures also contained cocaine. Trial Tr. 211:8-216:23, 219:22-226:2, 324:4-328:15 and 330:21-332:10. Counts 3 and 4 of the indictment originally charged Pendleton with first degree felonies involving cocaine but were amended to charge him with corresponding fifth degree felonies. Because the indictment was amended, the statutory bulk amount of cocaine was not the basis of a conviction or a penalty

{¶ 28} The "Double Jeopardy Clause of the United States Constitution," along with Section 10, Article I of the Ohio Constitution, "prohibits * * * multiple punishments for the same offense." (Citation omitted.) *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 10. In practice, the import of the prohibition is to "prevent[] a sentencing court from prescribing greater punishment than the legislature intended." (Citation omitted.) *Id.* at ¶ 11. Ohio's merger statute, R.C. 2941.25, "resolves both the constitutional and state statutory inquiries regarding the General Assembly's intent to permit cumulative punishments for the same conduct," although application of the "two-tiered test set forth in R.C. 2941.25" is "not necessary * * * when the legislature's intent to impose multiple punishments is clear from the language of [a given] statute." (Citations omitted.) *State v. Freeders*, 2d Dist. Montgomery No. 23952, 2011-Ohio-4871, ¶ 13.

{¶ 29} As Pendleton recognizes, a number of Ohio courts have declined to merge offenses in cases analogous to his. *See* Appellant's Br. 17-18. For instance, in *State v. Delfino*, 22 Ohio St.3d 270, 273, 490 N.E.2d 884 (1986), the Ohio Supreme Court considered "whether simultaneous possession of different controlled substances constitutes a single offense or multiple offenses." The Court determined that in cases in which "different facts [must] be proven to sustain * * * conviction[s] under * * * different subsections," the legislature "intended the possession of the different drug groups to constitute different [violation]s." (Citations omitted.) *Id.* at 274; *see also, e.g., State v. Huber*, 2d Dist. Clark No. 2010-CA-83, 2011-Ohio-6175, ¶ 7-8; *State v. Howard*, 2017-Ohio-9392, ___ N.E.3d ___, ¶ 65 (4th Dist.); *State v. Rice*, 5th Dist. Licking No. 16-CA-

enhancement in this case.

87, 2017-Ohio-1504, ¶ 12; *State v. Santiago*, 8th Dist. Cuyahoga No. 101601, 2015-Ohio-1300, ¶ 9-12; *State v. Helmick*, 9th Dist. Summit No. 27179, 2014-Ohio-4187, ¶ 26; *State v. Johnson*, 6th Dist. Ottawa No. OT-13-022, 2014-Ohio-1558, ¶ 7-9.

{¶ 30} In this case, Pendleton's conviction for trafficking in heroin required proof that the "drug involved in the violation [was] heroin or a compound, mixture, preparation, or substance containing heroin," pursuant to R.C. 2925.03(C)(6), and his conviction for trafficking in fentanyl required proof that the "drug involved in the violation [was] any compound, mixture, preparation, or substance included in [S]chedule I or [S]chedule II, with the exception of * * * heroin," pursuant to R.C. 2925.03(C)(1). His conviction for possession under R.C. 2925.11(C)(6) required proof that the "drug involved in the violation [was] heroin or a compound, mixture, preparation, or substance containing heroin," and his conviction for possession under R.C. 2925.11(C)(1) required proof that the "drug involved in the violation [was] any compound, mixture, preparation, or substance included in [S]chedule I or II, with the exception of * * * heroin." Accordingly, Pendleton's conviction for trafficking in heroin required proof of different facts under a different subsection vis-à-vis his conviction for trafficking in fentanyl, and his conviction for possession of heroin required proof of different facts under a different subsection vis-à-vis his conviction for possession of fentanyl. *Delfino* at 274; *Huber* at ¶ 7-8.

{¶ 31} Pendleton urges us to adopt the somewhat contrary position taken by Judge Ringland in his partial dissent in *State v. Woodard*, 12th Dist. Warren No. 2016-09-084, 2017-Ohio-6941. Appellant's Br. 18-21. In the dissent, Judge Ringland opined that two possession convictions, one for heroin and one for fentanyl, should have been merged inasmuch as they arose from the defendant's unitary act of obtaining a single bag

containing 0.106 grams of powder that tested positive for the presence of both of the drugs. *Id.*at ¶ 2, 6, 38 and 43-44. He found the refusal to merge the offenses to be unfair because "[t]here [was] no evidence that [the defendant] knew the [powder] contained both heroin and fentanyl," remarking that whether "a[ny] person could [have ascertained] that the bag contained" heroin as well as fentanyl "[w]ithout the help of science and technology * * * is not clear." Yet, noting that drug traffickers "spik[e] heroin with much more potent synthetic opioids, such as fentanyl and carfentanil," with increasing frequency, the judge clarified that his "analysis, of course, [was] limited to possession offenses" and did not apply to drug traffickers, who are the persons responsible for "adding these highly dangerous compounds" to other drugs. *Id.* at ¶ 45 and 46 fn.5 (Ringland, J., dissenting).

{¶ 32} Here, the violations charged in Counts 1 and 2 of the indictment implicated the provisions of R.C. 2925.03(C)(6) and 2925.11(C)(6), whereas the charges in Counts 5 and 6 implicated the provisions of R.C. 2925.03(C)(1) and 2925.11(C)(1). Concomitantly, Pendleton's convictions on Counts 1 and 2 required proof that the drug involved was heroin, whereas his convictions on Counts 5 and 6 required proof that the drug involved was fentanyl. These distinctions suggest " 'that the legislature intended [for] possession of the different drug[s,] [and trafficking in the different drugs,] to constitute different offenses.' " *Huber* at ¶ 7, quoting *Delfino* at 274. As a result, we find that trial court did not err by refusing to merge Counts 1, 2, 5 and 6 into a single conviction for purposes of sentencing. Pendleton's third assignment of error is overruled.

{¶ 33} For his fourth assignment of error, Pendleton contends that:

APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST

WEIGHT OF THE EVIDENCE IN VIOLATION OF HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE OHIO CONSTITUTION.

**{¶ 34}** Pendleton argues that "the weight of the evidence did not demonstrate that [he] trafficked [in] and possessed cocaine, fentanyl, and heroin, [nor did it support the jury's findings of guilt on the] firearm specifications attached to Counts 1 through 6." Appellant's Br. 23. Additionally, he "reiterates [but does] not repeat" his argument that the State failed to prove the bulk amount of fentanyl involved in the offenses charged in Counts 5 and 6. *Id.*

**{¶ 35}** In a challenge based on the weight of the evidence, an appellate court must review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial. *Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8. A trial court's "judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Hill* at ¶ 8, quoting *Martin* at 175.

**{¶ 36}** Pendleton's implicit premise in his challenge to the weight of the evidence is that the State never proved that he resided at 803 Farlow Street. *See* Appellant's Br. 23. Although he "cannot dispute that the State presented substantial evidence * * * that he spent a significant amount of time" there, he argues nonetheless that the State introduced "no evidence proving that [any of the items recovered from the residence]

belonged to [him,] or even that he knew of their presence." *Id.* The implication is that because the State did not establish that Pendleton lived at 803 Farlow Street, it failed to prove that he had constructive possession of the controlled substances, firearms and other items on which his convictions were based. *See id.*

{¶ 37} A person has constructive possession of something if he is aware of its presence and is able to exercise dominion and control over it, "even though [it] may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus; *State v. Charlton*, 2d Dist. Montgomery No. 23227, 2010-Ohio-1683, ¶ 22, citing *Hankerson* and *State v. Wolery*, 46 Ohio St.2d 316, 348 N.E.2d 351 (1976). Possession "may not be inferred solely from mere access to [a] thing * * * through ownership or occupation of the premises upon which [it] is found," but the discovery of "readily usable drugs [or other contraband] in close proximity to a defendant may constitute sufficient circumstantial evidence to support a finding of constructive possession." R.C. 2925.01(K); *State v. Caldwell*, 2d Dist. Greene No. 2013-CA-76, 2015-Ohio-2551, ¶ 30, quoting *State v. Townsend*, 2d Dist. Montgomery No. 18670, 2001 WL 959186, *3 (Aug. 24, 2001).

{¶ 38} At trial, the State presented ample evidence that Pendleton resided at 803 Farlow Street, including a prescription bottle and hospital records bearing Pendleton's name; pictures of Pendleton's children; and video recordings showing Pendleton at the residence at all hours engaging in a variety of domestic chores and recreational activity. *See* Trial Tr. 149:6-149:17, 151:10-153:19, 155:8-156:1, 164:20-166:19, 176:21-178:19, 209:3-210:12, 252:12-252:21, 384:6-385:18 and 387:22-399:10. The bedroom in which the controlled substances and firearms were found—hidden in a box concealed inside a

ventilation register in the floor—is the same room in which the prescription bottle, hospital records and photographs of Pendleton's children were found, indicating that Pendleton used the room as his bedroom. *Id.* at 148:25-156:1 and 207:12-216:17. A distinctive pair of green shoes was also found in the room and appeared to be the same green shoes seen in the background of a video recording stored on Pendleton's cellular telephone. *Id.* at 211:8-211:17 and 232:5-232:13.

{¶ 39} Given the extent of the evidence linking Pendleton to 803 Farlow Street, and in particular, the evidence linking him to the bedroom in which the controlled substances and firearms were discovered, we cannot conclude that the jury clearly lost its way in finding Pendleton guilty of possession of cocaine, fentanyl and heroin, or in finding him guilty on the firearm specifications attached to Counts 1 through 6.[4] Similarly, given the additional evidence, such as digital scales and sandwich bags that tested positive for controlled substance residues, we further cannot conclude that the jury clearly lost its way in finding Pendleton guilty of trafficking in cocaine, fentanyl and heroin. *See id.* at 216:8-217:3 and 222:4-222:9; *see also, e.g.*, *State v. Reece*, 3d Dist. Marion No. 9-93-34, 1994 WL 83416, *4 (Mar. 14, 1994) (referring to "expert evidence" showing that plastic bags are among "the types of items commonly used in the drug trade").

{¶ 40} We have already determined that the State presented sufficient evidence to prove the statutory bulk amount of fentanyl involved in the offenses charged in Counts 5 and 6 of the indictment. Because the jury received evidence that officers recovered more than 100 grams of substances satisfying the definition of "bulk amount" in R.C. 2925.01(D)(1)(d), we hold that the jury did not clearly lose its way when it determined the

---

[4] The firearms were in working order. Trial Tr. 287:18-293:4.

bulk amount of fentanyl involved in Counts 5 and 6.

{¶ 41} Therefore, we find that Pendleton's convictions on Counts 1 through 6 of the indictment, including the attached firearm specifications, were not against the manifest weight of the evidence. Pendleton's fourth assignment of error is overruled.

{¶ 42} For his fifth assignment of error, Pendleton contends that:

THE TRIAL COURT ERRED BY NOT PROPERLY INSTRUCTING THE JURY, WHICH PREJUDICED APPELLANT AND VIOLATED HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.[5]

{¶ 43} Specifically, Pendleton faults the trial court for failing to instruct the jury to disregard excluded fingerprint evidence and for failing to instruct the jury regarding the necessity that it determine the bulk amount of fentanyl involved in the offenses charged in Counts 5 and 6 of the indictment.[6] Appellant's Br. 24-25. Pendleton argues that the court's omission of an instruction to disregard "the excluded [fingerprint] evidence was highly prejudicial" because it was the "only forensic evidence [that] directly linked [him] to the drugs found at 803 Farlow Street." *See id.* at 24. With respect to the bulk amount of fentanyl, Pendleton notes that an official comment appended to the Ohio Jury Instructions indicates that the purpose of a bulk amount instruction is to ensure that a jury returns a finding as to the bulk amount of a controlled substance for purposes of the

---

[5] The statement Pendleton presents as his "Assignment of Error No. 5" is clearly two assignments of error, each subject to a specific, if similar, standard of review. Appellant's Br. 24-27.

[6] The excluded fingerprint evidence consisted of a print attributed to Pendleton found on the tempered glass measuring cup recovered from 803 Farlow Street. Trial Tr. 299:7-299:25 and 309:20-312:4.

statutory schemes established in R.C. 2925.03(C) and 2925.11(C); he argues that the court's failure to deliver a bulk amount instruction "deprived him of a right to a fair trial" on Counts 5 and 6 but does not explain how the absence of the instruction prejudiced him. *See id.* at 25.

**{¶ 44}** A trial court's decisions to give or to withhold particular jury instructions are reviewed for abuse of discretion, taking into account the facts and circumstances of the case. (Citation omitted.) *State v. Underwood*, 2d Dist. Montgomery No. 26711, 2016-Ohio-1101, ¶ 9. Because Pendleton did not object to the instructions at trial, he has forfeited all but plain error. (Citations omitted.) *State v. Robinson*, 8th Dist. Cuyahoga No. 105951, 2018-Ohio-2058, ¶ 11; Appellant's Br. 24. Reversal for plain error is warranted only when, "but for the error, the outcome of the trial would have been different." *Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, ¶ 66, citing. *Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043.

**{¶ 45}** Here, the jury received substantial evidence connecting Pendleton to 803 Farlow Street and, in turn, supporting its verdicts on Counts 1 through 6 by way of the doctrine of constructive possession. *See* Trial Tr. 537:10-538:12 (instruction to the jury on constructive possession). We find accordingly that the outcome of Pendleton's trial would not have been different had the jury been instructed to disregard the excluded fingerprint evidence.

**{¶ 46}** Regarding the trial court's omission of a formal "bulk amount" instruction concerning the quantity of fentanyl involved in Counts 5 and 6, Pendleton himself notes that the court did, at least, instruct the jury to make such a determination, and the verdict forms for Counts 5 and 6 accurately tracked the provisions of R.C. 2925.01(D)(1)(d),

2925.03(C)(1) and 2925.11(C)(1). *See* Appellant's Br. 25-26. The jury found that the bulk amount of fentanyl involved was equal to or greater than 100 grams but fewer than 1000 grams based on the recovery of a total of 133.62 grams of mixtures containing fentanyl from 803 Farlow Street. Pursuant to R.C. 2925.01(D)(1)(d), 2925.03(C)(1) and 2925.11(C)(1), the jury's finding thus comported with the statutory definition of "bulk amount" and the evidence adduced by the State.

{¶ 47} We find, then, that the outcome of Pendleton's trial would not have been different had the trial court delivered the standard instruction on "bulk amount." Pendleton's fifth assignment of error is overruled.

{¶ 48} For his sixth assignment of error, Pendleton contends that:

FURTHERMORE, TRIAL COUNSEL'S FAILURE TO OBJECT OR PROPOSE APPROPRIATE INSTRUCTIONS CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL.[7]

{¶ 49} Pendleton argues, too, that his defense counsel did not provide effective representation inasmuch as counsel failed to object to the omission of jury instructions regarding the excluded fingerprint evidence and the bulk amount of fentanyl. Appellant's Br. 26-27. To prevail on a claim of "ineffective assistance of counsel, a defendant must satisfy the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 38 (2d Dist.). The *Strickland* test requires a showing that: "(1) defense counsel's performance was so deficient that [it did not fulfill the right to assistance of counsel] guaranteed under the Sixth Amendment to the United States Constitution; and (2) * * *

---

[7] *See supra* note 5.

defense counsel's errors prejudiced the defendant." *Id.,* citing *Strickland* at 687. Judicial "scrutiny of counsel's performance must be highly deferential," so "a [reviewing] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland* at 689, citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). To show prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of [a given] proceeding would have been different." *Id.* at 694. A failure "to make either showing defeats" the claim. *Cardenas* at ¶ 38.

{¶ 50} On review of Pendleton's fifth assignment of error, we determined that even if the trial court had delivered a formal "bulk amount" instruction and cautioned the jury to disregard the excluded fingerprint evidence, the outcome of the trial would not have been different. As a consequence of that determination, we find that the failure of Pendleton's defense counsel to object to the omission of such instructions did not result in undue prejudice. Pendleton's sixth assignment of error is overruled.

{¶ 51} For its cross-assignment of error, the State contends that:

THE TRIAL COURT ERRED BY GRANTING DEFENDANT'S MOTION FOR ACQUITTAL ON THE WEAPONS UNDER DISABILITY CHARGE.

{¶ 52} The State argues that the trial court erred by acquitting Pendleton on the charge of having a weapon while under disability. Appellee's Br. 22. Specifically, the State claims that the trial court misconstrued its burden of proof pursuant to R.C. 2923.13. *Id.* at 22-23. We review the trial court's interpretation of the statute de novo. (Citations omitted.) *State v. Mullins,* 2016-Ohio-8347, 75 N.E.3d 1008, ¶ 19 (10th Dist.).

{¶ 53} Pendleton moved for acquittal at the close of the State's case. The trial court overruled the motion as it related to Counts 1 through 6 of the indictment, but it sustained the motion on Count 7, the charge of having a weapon while under disability. Trial Tr. 469:3-469:5 and 470:12-471:5. Explaining its rationale, the court indicated its view that R.C. 2923.13 imposed a burden on the State not only to prove that Pendleton had "a prior conviction * * * plac[ing] him under a [legal] disability," but also to prove the negative proposition that Pendleton had not successfully applied for the lifting of the disability under R.C. 2923.14. *See id.* at 470:12-471:5.

{¶ 54} The issue of whether a defendant has been relieved of a disability pursuant to R.C. 2923.14 "is an affirmative defense," rather than an element of the State's case under R.C. 2923.13. *State v. Lanier*, 2d Dist. Clark No. 2007 CA 77, 2008-Ohio-4018, ¶ 39. As a result, we find that the trial court erred by acquitting Pendleton on the charge of having a weapon while under disability, and in that respect, we reverse its decision on Pendleton's motion for acquittal in part. We emphasize that our decision to reverse the trial court's ruling in part has no effect on Pendleton's acquittal. *See State v. Bistricky*, 51 Ohio St.3d 157, 555 N.E.2d 644 (1990), syllabus; *State v. Hari*, 2016-Ohio-2987, 65 N.E.3d 328, ¶ 19 (3d Dist.); *State v. Roberts*, 9th Dist. Wayne No. 12 CA 0001, 2012-Ohio-5018, ¶ 12. The State's cross-assignment of error is sustained.

### III. Conclusion

{¶ 55} We find that the indictment against Pendleton met the requirement that it contain a statement charging him with a cognizable violation of the law, in compliance with Crim.R. 7(B). As well, we find that the jury received evidence enough to justify its verdicts; that the trial court correctly determined which of Pendleton's offenses should be

merged for sentencing; that the trial court's instructions to the jury were not prejudicially imprecise; and that Pendleton's attorney did not render inadequate representation by failing to object to the jury instructions. Pendleton's assignments of error are therefore overruled, and his convictions are affirmed. Additionally, having found that the trial court misconstrued the State's burden of proof with respect to the charge of having a weapon while under disability, we sustain the State's cross-assignment of error.

{¶ 56} Finally, we note that under his fourth assignment of error, Pendleton contends in passing that "the weight of the evidence did not demonstrate that [he] trafficked [in] and possessed * * * heroin," as charged in Counts 1 and 2 of the indictment against him. *See* Appellant's Br. 23. Although we have reached the opposite conclusion—i.e. that the weight of the evidence did demonstrate that Pendleton trafficked in, and possessed, at least a trace amount of heroin—we are troubled by the simultaneous, contradictory use of the same evidence to establish not only the quantity of heroin involved in these offenses, but also to establish the quantity of fentanyl involved for purposes of the trafficking and possession offenses charged in Counts 5 and 6.

{¶ 57} The heroin-related convictions and the fentanyl-related convictions alike were predicated on the same 133.62 grams of mixtures containing, among other things, undetermined amounts of fentanyl and heroin. Yet, for purposes of the heroin-related offenses, the fentanyl was treated as filler, whereas for purposes of the fentanyl-related offenses, the fentanyl was treated as a Schedule II controlled substance. Simultaneously, the heroin was treated as a Schedule I controlled substance for purposes of the heroin-related offenses, but as filler for purposes of the fentanyl-related offenses. As a result of this double counting, Pendleton was sentenced to the mandatory maximum

prison term for a first degree felony involving heroin under R.C. 2925.03(C)(6)(g), and he was sentenced for a second degree felony involving fentanyl under R.C. 2925.03(C)(1)(d), rather than for a fifth degree felony involving fentanyl under R.C. 2925.03(C)(1)(a).

**{¶ 58}** Consistent with principles of due process, we question the propriety of characterizing the same 133.62 grams of powder as 133.62 grams of heroin mixed with filler for purposes of determining the quantity of heroin involved, and simultaneously, as 133.62 grams of fentanyl mixed with filler for purposes of determining the quantity of fentanyl involved. The alternative treatment of a drug as a controlled substance in one instance, and as a filler in the next, seems difficult to reconcile with the connotation of the word "filler," which by one formal definition means "[t]hat which fills any space; specifically, a composition used to fill the grain of wood before applying paint or varnish." *Webster's New Twentieth Century Dictionary* 657 (1964). Though the Ohio Supreme Court has held that for purposes of a prosecution for cocaine possession, "any fillers that are part of the usable drug[ ] must be considered for purposes of determining [the amount of cocaine involved, and thereby,] the appropriate penalty [pursuant to] R.C. 2925.11(C)(4)[(b)-(f)]," the holding seems to apply only to cases involving a single controlled substance mixed with inert filler material. (Emphasis added.) *See State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, ¶ 3.

**{¶ 59}** Thus, we share the concern expressed not only in the dissent here, but also by Judge Ringland in his dissent in *State v. Woodard*, 12 Dist. Warren No. 2016-09-084, 2017-Ohio-6941, ¶ 49. We find, however, in the absence of a clear statutory mandate to the contrary, or any authority in the federal constitution or the Ohio Constitution, that

we must affirm Pendleton's convictions.

. . . . . . . . . . . .

WELBAUM, P.J., concurs.

FROELICH, J., concurring in part and dissenting in part:

**{¶ 60}** Pendleton was found and charged with drugs totaling 133.62 grams, the weight of which consisted of a mixture of ingredients, including heroin, fentanyl, and fillers. Based on this evidence, Pendleton has been convicted of aggravated trafficking in *133.62 grams* of drugs (fentanyl) and trafficking in *133.62 grams* of heroin. In an almost pharisaic reality, Pendleton has been found guilty of and sentenced for trafficking in 267.24 grams of drugs when he only had 133.62 grams. Accordingly, I dissent as to those convictions.

**{¶ 61}** Under both the United States and Ohio Constitutions, the Double Jeopardy Clause protects against three abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *E.g.*, *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds, *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). When multiple punishments are imposed in the same proceeding, the Double Jeopardy Clause prevents the trial court from imposing a greater punishment than the legislature intended. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 16. This case implicates the prohibition against multiple punishments for the same offense.

{¶ 62} Ohio's allied offense statute, R.C. 2941.25, codifies the double jeopardy protection against multiple punishments for the same offense. *E.g., State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23; *State v. Pope*, 2017-Ohio-1308, 88 N.E.3d 584, ¶ 29. That statute provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 63} " '[W]hen determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.' " *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *Ruff* at ¶ 31. As to the question of import and significance, "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each

offense is separate and identifiable." *Ruff* at ¶ 23.

**{¶ 64}** R.C. 2901.03(B) provides that "[a]n offense is defined when one or more sections of the Revised Code state a positive prohibition or enjoin a specific duty, and provide a penalty for violation of such prohibition or failure to meet such duty."   In order for there to be a conviction for an offense, there must be an adjudication of guilt and a sentence or penalty imposed.   *E.g.*, *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 18, citing *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 24 ("The defendant is not 'convicted' for purposes of R.C. 2941.25(A) until the sentence is imposed.").

**{¶ 65}** Pendleton was found guilty of and sentenced for two trafficking offenses in violation of R.C. 2925.03(A)(2), which prohibits persons from preparing for shipment, shipping, transporting, delivering, preparing for distribution, or distributing "a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."   The penalty sections of R.C. 2925.03 identify separate offenses for trafficking based on the drug involved and set forth different felony degrees and penalties depending on the amount of the drug involved.

**{¶ 66}** With respect to fentanyl, conduct that violates R.C. 2925.03(A)(2) constitutes the offense of aggravated trafficking in drugs and is, at a minimum, a felony of the fourth degree.   R.C. 2925.03(C)(1)(a).   Pendleton was charged with and convicted of aggravated trafficking in drugs where "the amount of drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount," a second-degree felony.   R.C. 2925.03(C)(1)(d).   When the drug involved is "heroin or a

compound, mixture, preparation or substance containing heroin," an offender commits trafficking in heroin, which, at a minimum, is a fifth-degree felony. R.C. 2925.03(C)(6)(a). Pendleton was charged with and convicted of trafficking in heroin where "the amount of drug involved equals or exceeds fifty grams but is less than one hundred grams," a felony of the first degree. R.C. 2925.03(C)(6)(f).

{¶ 67} A factor that increases the level of an offense must be pled and proven by the State as an element of the offense. *State v. Tate*, 138 Ohio St.3d 139, 2014-Ohio-44, 4 N.E.3d 1016, ¶ 17 (where prior conviction elevates offense from misdemeanor to felony, the prior conviction is an essential element of the offense); *State v. Smith*, 121 Ohio St.3d 409, 2009-Ohio-787, 905 N.E.2d 151, ¶ 21 ("Because the value of the property stolen affects the degree of the offense and not just the punishment available upon conviction for the offense, it is an essential element of theft.); *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, ¶ 8 ("When existence of a prior conviction does not simply enhance the penalty but transforms the crime itself by increasing its degree, the prior conviction is an essential element of the crime and must be proved by the state."); *State v. Allen*, 29 Ohio St.3d 53, 506 N.E.2d 199 (1987) (an element elevates the degree of the offense, whereas an enhancement increases only the penalty); *State v. Harowski*, 2d Dist. Montgomery No. 12232, 1991 WL 213894 (Sept. 20, 1991) (defendant's prior drug conviction, which elevated offense from third-degree felony to second-degree felony, was an element of the offense to be pled and proven by the State). Accordingly, the amount of drug involved was an element of the trafficking offenses of which Pendleton was found guilty and sentenced.

{¶ 68} I recognize that this court has held, as have several other Ohio appellate

districts, that the simultaneous possession of different types of drugs constitutes separate offenses that do not merge as allied offenses of similar import. *See State v. Huber*, 2d Dist. Clark No. 2010-CA-83, 2011-Ohio-6174, ¶ 7. For example, had Pendleton been found with a bag containing 133.62 grams of fentanyl and another bag with 133.62 grams of heroin, Pendleton could be separately charged, found guilty, and sentenced for possession of / trafficking in 133.62 grams of fentanyl and 133.62 grams of heroin. Possession and trafficking offenses require proof as to the specific drug involved, and thus a charge based on one type of controlled substance cannot be supported by evidence of the possession of or trafficking in a different controlled substance.

**{¶ 69}** Addressing a case where the defendant possessed a single bag of drugs containing a mixture of heroin and fentanyl (and in which the quantity of the drugs was not an element), the Twelfth District stated that "[t]he fact that the two controlled substances were found in the same baggie is of no consequence" to the allied-offense analysis. *State v. Woodard*, 12th Dist. Warren No. CA2016-09-084, 2017-Ohio-6941, ¶ 35. I share the concerns raised in the dissent in *Woodward*:

Simply, the record reflects that the particular heroin that appellant possessed was laced with fentanyl. In this case, there was a single course of conduct. There is no evidence that the offenses were committed with separate animus or motivation. Though heroin (an opioid) and fentanyl (a synthetic opioid) are scheduled differently, there was no separate or identifiable harm based on these facts. Under these circumstances, I do not see the societal benefit to convicting a drug user on two charges from what is generally one criminal act. Moreover, I do not believe the majority

decision [concluding that the offenses were not allied offenses of similar import] comports with the rationale behind the merger analysis and double jeopardy protections.

*Woodward* at ¶ 46 (Ringland, J., dissenting.) Judge Ringland presciently noted that the failure to merge the offenses "may also pose problems for future cases involving bulk weight controlled substances. This is problematic because the statutory scheme imposes enhanced penalties for bulk weight offenses." *Id.* at ¶ 47. Pendleton's case presents such a bulk-weight problem.

{¶ 70} In *Gonzales*, the Ohio Supreme Court held on reconsideration that "the entire 'compound, mixture, preparation, or substance,' including any fillers that are part of the usable drug, must be considered for the purpose of determining the appropriate penalty for cocaine possession under R.C. 2925.11(C)(4)." *Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, ¶ 3. *Gonzales*, however, did not address whether the *same* filler may be used to determine the amount of drugs involved for possession or trafficking offenses involving commingled controlled substances, i.e., whether the defendant could not have been found guilty and sentenced for the heroin offense without utilizing the exact same evidence as the fentanyl offense.

{¶ 71} Here, Pendleton's conviction for trafficking in heroin was based on identical evidence for trafficking in fentanyl; the State used the exact same 133.62 grams of heroin, fentanyl, and fillers as an element to elevate the offense levels for both trafficking in heroin and aggravated trafficking in drugs (fentanyl). Whereas trafficking in heroin and aggravated trafficking in fentanyl would typically involve proof of separate drugs, the State used *both* drugs to support *both* convictions.

**{¶ 72}** Stated in the framework of R.C. 2941.25, Pendleton engaged in a single course of conduct, i.e., the simultaneous possession of commingled heroin and fentanyl. There is no evidence that the offenses were committed with separate animus or motivation or that there were separate victims or that the harm caused was separate and identifiable.  And while sometimes there arguably may be separate harms that occur from the trafficking in heroin and fentanyl, the facts of this case do not support such a conclusion here.  Finally, I find no indication that the legislature intended to allow the State to simultaneously characterize the same 133.62 grams of powder as both 133.62 grams of heroin mixed with filler and 133.62 grams of fentanyl mixed with filler, thus allowing the defendant to be sentenced for both trafficking in heroin (133.62 grams) and aggravated trafficking in drugs (133.62 grams fentanyl).

**{¶ 73}** I would conclude that Pendleton's separate convictions for trafficking in heroin (F1) and aggravated trafficking in drugs (fentanyl - F2) are allied offenses of similar import due to the State's use of the same evidence – specifically, *both* drugs and the same filler -- to elevate the offense levels for both offenses.   I would reverse Pendleton's sentences on these offenses and remand for the offenses to be merged as allied offenses of similar import.

. . . . . . . . . . . .

Copies mailed to:

D. Andrew Wilson
Andrew P. Pickering
Ryan A. Saunders
Samuel H. Shamansky
Donald L. Regensburger
Hon. Douglas M. Rastatter