[Cite as *State v. Holloway*, 2018-Ohio-4636.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-91 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-265 |
| | : | |
| AKEYINDE E. HOLLOWAY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of November, 2018.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

STEVEN H. ECKSTEIN, Atty. Reg. No. 0037253, 1208 Bramble Avenue, Washington Court House, Ohio 43160
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

**{¶ 1}** Defendant-Appellant, Akeyinde Holloway, appeals from his conviction and sentence on three counts of aggravated trafficking in drugs, three counts of trafficking in drugs, three counts of aggravated possession of drugs, and three counts of possession of drugs. After a jury found Holloway guilty of all counts as charged, the trial court merged several counts and sentenced Holloway to a total of 12.5 years in prison. The court also ordered forfeiture of money seized by the police.

**{¶ 2}** Holloway contends that the trial court erred in several ways, including denying his motion to dismiss on speedy trial grounds, denying his motion to suppress evidence, denying his Crim.R. 29(A) motion for acquittal, and imposing consecutive sentences. In addition, Holloway argues that the judgment was supported by insufficient evidence and against the manifest weight of the evidence, and that trial counsel rendered ineffective assistance by failing to call a witness to testify at the suppression hearing. Our review reveals no error, and the judgment of the trial court, therefore, will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 3}** In the early months of 2016, Springfield Police Detective Jerrod Osborne had been investigating Akeyinde Holloway for drug trafficking. On March 23, 2016, Osborne was driving an unmarked car and was doing drive-bys of 17 North Shaffer Street in Springfield, Ohio. During his surveillance, children were in the vicinity of the house.

**{¶ 4}** Around noon, Osborne saw what appeared to be a hand-to-hand drug transaction between Holloway and a female. After seeing the transaction, Osborne called Officer Elliott, who was a member of the SOFAST Task Force, and asked him to

assist in making contact with Holloway. Osborne then doubled back, parked his car, and exited. He was wearing a vest marked "police" and had a badge on his belt.

{¶ 5} When Osborne got to the scene, Holloway was standing at the edge of a sidewalk that met the street. Osborne called out "Springfield Police," said Holloway's name, and told him to stop. Instead of stopping, Holloway ran into 17 North Shaffer Street. Osborne then ran to the south side of the house in case Holloway intended to run out the back. As Osborne walked along the side of the house, he saw Holloway through a large window in what turned out to be the kitchen. A bathroom was also visible next to the kitchen, through an open door. Holloway was holding a purple bag, and Osborne saw him make a crouching motion in the bathroom.

{¶ 6} Holloway then came out of the bathroom and went toward the front porch. At that point, Osborne returned to the front of the house and saw Holloway come out to the porch without the purple bag. Holloway asked what was wrong, and Osborne asked Holloway what he had put down inside the house. Holloway did not reply. He also did not reply to Osborne's questions about what he was doing at the house or whether he lived there.

{¶ 7} The door to the house was partially ajar, and Osborne knocked on the door. A man, Donald Preston, was sitting on a couch near the door and responded. Osborne told Preston why he was there and that he had seen Holloway place a bag in the bathroom. Preston gave Osborne permission to search the areas where Osborne had seen Holloway. However, Osborne did not obtain a signed consent form from Preston.

{¶ 8} After receiving permission to enter, Holloway went through the living room and dining room, into the kitchen and bathroom area. After being in the house for less

than a minute, Osborne found a purple Crown Royal bag sitting on the floor of the shower. The shower was wet, but the bag was only partially wet on the bottom. Osborne collected the bag, which contained drugs, arrested Holloway, and administered *Miranda* rights. At that time, Osborne asked Holloway why he had run, and Holloway said, "yeah, I ran. The police was outside." Transcript of Trial Proceedings, Vol. II, p. 166.

{¶ 9} Upon searching Holloway, the police found $2,000 in Holloway's pocket and $1,900 inside a sock in his hoodie. Upon being tested, the drugs included about 4.71 grams of methamphetamine; 50 Diazepam (Valium) tablets; four Alprazolam (Xanax) tablets; one Buprenorphine (Subutex) tablet; one Hydrocodone (Vicodin) tablet; and five Oxycodone tablets.

{¶ 10} Holloway was subsequently indicted for 12 counts of trafficking and possession of drugs, with forfeiture specifications. After a jury trial, Holloway was convicted and sentenced, and this appeal followed.

## II. Speedy Trial

{¶ 11} Holloway's First Assignment of Error states that:

> The Trial Court Erred in Denying Holloway's Motion to Dismiss in Violation of the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I [of] the Ohio State Constitution.

{¶ 12} Under this assignment of error, Holloway contends that the trial court should have dismissed the case against him due to violation of speedy trial requirements. According to Holloway, after counting the time tolled by the filing of various motions, 333 days (with some days being triple-counted) elapsed from the date of his arrest to the time

of trial.

{¶ 13} The Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee the right to a speedy trial. Ohio implements these rights through R.C. 2945.71, the speedy trial statute. *Brecksville v. Cook*, 75 Ohio St.3d 53, 55, 661 N.E.2d 706 (1996). Under R.C. 2945.71(C)(2), persons charged with felonies must be brought to trial within two hundred seventy days after their arrest, subject to any applicable tolling exceptions in R.C. 2945.72. *Id.* at 56. For purposes of counting time, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E).

{¶ 14} Defendants can establish a prima facie case for a speedy trial violation when they show that the trial was held past the statutory time limit. The State then must produce evidence showing that applicable exceptions tolled the time and the trial was timely. *State v. Butcher*, 27 Ohio St.3d 28, 30-31, 500 N.E.2d 1368 (1986); *State v. Hyde*, 2d Dist. Clark No. 2013 CA 41, 2014-Ohio-1278, ¶ 12. Our standard of review is simply to count the days as R.C. 2945.71 directs. *State v. Lackey*, 2015-Ohio-5492, 55 N.E.3d 613, ¶ 22 (2d Dist.).

{¶ 15} In responding to Holloway's argument, the State concurs with the dates excluded by Holloway. However, the State notes that even if Holloway's 333-day figure is used as a starting point, these days must be further reduced by a motion to withdraw that Holloway's attorney filed on July 25, 2017. This motion was resolved on August 18, 2017, when the court granted the motion to withdraw and another attorney entered an appearance on Holloway's behalf. As the State notes, 24 days were tolled, and these days were triple-counted because Holloway was in jail. Accounting for this tolling, 333

minus 72 equals 261, which means that Holloway went to trial in less than the 270 days allotted under the speedy trial statute.

{¶ 16} In reviewing the file, we noted that documents attached to Holloway's speedy trial motion indicated that he appeared to have requested early disposition of his case pursuant to R.C. 2941.401. Holloway's motion, itself, did not rely on this statute; instead Holloway relied only on R.C. 2945.71. *See* Doc. #35.

{¶ 17} Some discrepancy exists in the dates in the documents attached to the speedy trial motion. Specifically, Holloway's signed request for disposition was dated February 22, 2017. In contrast, the Ohio Department of Rehabilitation and Correction's letter to the prosecutor and clerk, enclosing the request, was dated February 15, 2017. In this letter, the ODRC indicated that it received Holloway's request for disposition on February 13, 2017. The case number on these documents was also incorrect, as the disposition request referred to Case No. 16CR235, rather than 16CR265. There is no indication in the record, however, that Holloway had another case pending in Clark County.

{¶ 18} Holloway has also not raised R.C. 2941.401 on appeal. As a result, we consider the issue waived. Nonetheless, even if we were to consider it, the outcome would be no different.

{¶ 19} We have held that "[w]hen a defendant is incarcerated in this state on other charges, R.C. 2941.401, a specific statute, prevails over the general speedy trial statutes of R.C. 2945.71 et seq., and governs the time within which the state must bring him or her to trial." *State v. Stewart*, 2d Dist. Montgomery No. 21462, 2006-Ohio-4164, ¶ 21, citing R.C. 2945.71(F). (Other citations omitted.)

{¶ 20} R.C. 2941.401 provides that:

When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary or reasonable continuance.

* * *

The written notice and request for final disposition shall be given or sent by the prisoner to the warden or superintendent having custody of him, who shall promptly forward it with the certificate to the appropriate prosecuting attorney and court by registered or certified mail, return receipt requested.

{¶ 21} Using the earliest possible date of February 13, 2017, the 180-day period would have expired around August 11, 2017, which was well before the time that Holloway was brought to trial on August 30, 2017. However, we have held that the tolling provisions in R.C. 2945.72 apply to R.C. 2941.401. *See State v. Ray*, 2d Dist. Greene No. 2004-CA-64, 2005-Ohio-2771, ¶ 30. The motion to withdraw filed by Holloway's counsel was filed on July 25, 2017, and was not resolved until August 18, 2017. That

added an additional 24 days to the 180-day limit, meaning that the trial, which began on August 30, 2017, was timely under R.C. 2941.401.

{¶ 22} Since the trial was timely under any set of circumstances, the First Assignment of Error is overruled.

III.    Motion to Suppress

{¶ 23} In his discussion, Holloway has combined his Second, Third, and Fourth Assignments of Error, which relate to the trial court's decision on his motion to suppress evidence.    We will do the same.    These assignments of error state that:

The Trial Court Erred in Denying Holloway's Motion to Suppress by Finding Law Enforcement Had Consent to Enter and Search the Residence Thereby Allowing Improper Evidence Into the Trial in Violation of the Fourth Amendment of United States Constitution and Article I, Section 14 of the Ohio Constitution.

The Trial Court Erred in Denying Holloway's Motion to Suppress by Finding Law Enforcement Was Lawfully Present on the House Curtilage When Probable Cause Was Established Thereby Allowing Improper Evidence Into the Trial in Violation of the Fourth Amendment of the United States Constitution and Article I, Section 14 of the Ohio Constitution.

Trial Counsel Rendered Ineffective Assistance During Holloway's Motion to Suppress in Violation of Holloway's Rights Under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

## A. Consent to Search

{¶ 24} In connection with the Second Assignment of error, Holloway contends that Detective Osborne lacked a reasonable basis for believing that Donald Preston's consent to a search was valid. This argument is based on the fact that Osborne merely asked Preston if he lived at the house.

{¶ 25} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. As a result, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id*. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*.

{¶ 26} "Searches and seizures conducted without a prior warrant are unreasonable per se, and therefore illegal, subject to several well-established exceptions to the warrant requirement." *State v. Holloway*, 2d Dist. Clark No. 04CA0070, 2006-Ohio-4797, ¶ 16, citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One such exception concerns searches that are conducted with the consent of an owner or an occupier. *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988), citing *Maryland v. Macon*, 472 U.S. 463, 469, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985). *See also Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (consent can be given "from a third party who possesses common authority over the

premises").

{¶ 27} "The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, * * * but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *United States v. Matlock*, 415 U.S. 164, 172, 94 S.Ct. 988, 39 L.Ed.2d 242, fn. 7, (1974).

{¶ 28} "To rely on the consent exception of the warrant requirement, the state must show by 'clear and positive' evidence that the consent was 'freely and voluntarily' given." *Posey* at 427, quoting *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

{¶ 29} Consenting third parties do not need to have actual authority over the premises. *State v. Portman*, 2d Dist. Clark No. 2013-CA-68, 2014-Ohio-4343, ¶ 13, citing *United States v. Ayoub*, 498 F.3d 532, 537 (6th Cir.2007). (Other citation omitted.). An objective standard is used to decide if third-party consent is valid. Under this test, "consent is valid if an officer looking at the then-available facts could reasonably conclude that the third-party had apparent authority to consent." *Id.*, citing *Rodriguez* at 186. An officer's belief is unreasonable "if the surrounding circumstances would lead a reasonable person to doubt the authority of the third party." *Id.*, citing *Rodriguez* at 188.

{¶ 30} During the suppression hearing, Detective Osborne testified that Holloway failed to respond when he asked if 17 North Shaffer was Holloway's residence or if he had been staying there. Shortly thereafter, Osborne knocked on the partially open door

of the house and saw an older male (Donald Preston) sitting on a couch or love seat close to the door. Osborne asked Preston if he lived there, and Preston said that he did. Osborne also asked Preston if he knew Holloway, and he said that he did, "a little." Transcript of Suppression Hearing, p. 15. After that, Osborne explained to Preston what had occurred and asked for consent to search the areas of the house where he had seen Holloway. *Id.* Preston told Osborne that he could go ahead and look around. *Id.* Osborne also asked Preston if Holloway lived there, and Preston said no. *Id.* at p. 35.

{¶ 31} Holloway does not suggest what further inquiry would have been reasonable or required. The police officer specifically asked if Preston lived at the premises, and he was given a positive answer. There was no reason to doubt Preston's statement. In fact, Preston's daughter, who was present at the time of the search and testified at trial, confirmed that her father lived at the house and that he was sitting on the couch when the police came inside. Transcript of Trial Proceedings, Vol. II, at pp. 272 and 277.

{¶ 32} Because the State established that the police had consent to search the premises, the trial court did not err in overruling the motion to suppress. Accordingly, the Second Assignment of Error is without merit.

B. Alleged Trespass on the Curtilage

{¶ 33} Under the Third Assignment of Error, Holloway contends that the trial court erred in overruling the motion to suppress because Detective Osborne lacked probable cause for a warrantless search based on the "exigent circumstances" exception. According to Holloway, Osborne trespassed on the curtilage of the residence and his

observation of the purple bag, therefore, was tainted.

{¶ 34} Due to the right of privacy guaranteed by the Fourth Amendment, "warrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), quoting *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948). This is one of the exceptions to the warrant requirement, and it can apply where delays in obtaining warrants may endanger the police or others, or may allow evidence to be concealed or destroyed. *State v. Johnson*, 187 Ohio App.3d 322, 2010-Ohio-1790, 931 N.E.2d 1162, ¶ 14 (2d Dist.). Furthermore, while police cannot act on exigencies they create, where " 'the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed.' " *State v. Goode*, 2d Dist. Montgomery No. 25175, 2013-Ohio-958, ¶ 20, quoting *Kentucky v. King*, 563 U.S. 452, 462, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011).

{¶ 35} "The curtilage is an area around a person's home upon which he or she may reasonably expect the sanctity and privacy of the home. * * * Because the curtilage of a property is considered to be part of a person's home, the right of the police to come into the curtilage is highly circumscribed. * * * Absent a warrant, police have no greater rights on another's property than any other visitor has. * * * The only areas of the curtilage where the officers may go are those impliedly open to the public." *State v. Peterson*, 173 Ohio App.3d 575, 2007-Ohio-5667, 879 N.E.2d 806, ¶ 17 (2d Dist.).

{¶ 36} Despite these points, Osborne had a right to be in the curtilage, because Holloway fled into the house when Osborne attempted to approach him about the hand-to-hand transaction he had observed. Specifically, Osborne wore a bulletproof vest marked "police," had on a police badge, had identified himself as an officer, and told Holloway to stop. Instead of doing so, Holloway ran into the house. Osborne then went to the side of the house, as he was the only one there and he believed Holloway was going to run out of the back door. Transcript of Suppression Hearing, at pp. 30 and 54-55.

{¶ 37} The Supreme Court of Ohio has said that police officers may enter without a warrant when they have identified themselves and "are in hot pursuit of a suspect who flees to a house in order to avoid arrest * * *." *Middletown v. Flinchum*, 95 Ohio St.3d 43, 45, 765 N.E.2d 330 (2002). Courts have also held that where suspects are subject to lawful *Terry* stops, fleeing is " 'an affirmative act that hinders or impedes the officer in the performance of the officer's duties as a public official and is a violation of R.C. 2921.31, obstructing official business.' " *State v. Albright*, 7th Dist. Mahoning No. 14 MA 0165, 2016-Ohio-7037, ¶ 39, quoting *State v. Harris*, 10th Dist. No. 05AP-27, 2005-Ohio-4553, ¶ 16.

{¶ 38} In *Albright*, the police were dispatched to the defendant's house on a report of underage drinking. When officers arrived, two persons were in the front yard, and the officers believed they were under age 21. When an officer stated that he wanted to speak to them, the two males ran down the driveway. The officers tried to follow, but the defendant unsuccessfully attempted to block them. The officers then ran into the backyard, but were unable to find the suspects. The police eventually arrested the

defendant for obstructing official business.   *Id.* at ¶ 3-5, 8, and 10.

{¶ 39} After the defendant was convicted, he argued on appeal that "he had a legitimate expectation of privacy in the curtilage of his home," and that "the officers had no right to enter his property absent an exception to the warrant requirement."   *Id.* at ¶ 20.   The court of appeals disagreed, noting that "[i]f a police officer has a reasonable, articulable suspicion, in light of his experience, that criminal activity may be afoot, the officer may conduct an investigatory stop."   *Id.* at ¶ 34, citing *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).   The court further noted that after the two suspects ran, "there was clearly reasonable suspicion justifying an investigatory stop.   Pursuing the individuals to conduct a *Terry* stop was an authorized act within the officer's official capacity and was part of his lawful duties."   *Id.* at ¶ 41.

{¶ 40} The court then stated that, "[u]pon fleeing up the driveway, the suspects entered the back yard.   There was no indication the yard was fenced, contained in an enclosure with the house, or was otherwise shielded.   One could conclude the officer was entitled to proceed to the back yard, an open field by all indications, when in pursuit of fleeing individuals subject to at least a *Terry* stop."   *Albright*, 7th Dist. Mahoning No. 14 MA 0165, 2016-Ohio-7037, at ¶ 45.

{¶ 41} We discussed a similar situation in *State v. Etherington*, 172 Ohio App.3d 756, 2007-Ohio-4097, 876 N.E.2d 1285 (2d Dist.).   In that case, the police had observed the defendant engage in a suspected drug transaction and had followed him to his home, where they intended to initiate a traffic stop because he failed to use a turn signal.   *Id.* at ¶ 2-3.   When police officers approached the defendant, he retreated toward his front door and attempted to enter, just as an officer reached him.   The officer and the defendant

passed through the home's door and into a room, and during a struggle, the defendant threw a packet (which was later found to contain drugs) onto a chair. *Id.* at ¶ 4.

**{¶ 42}** After being charged, the defendant filed a motion to suppress. We concluded that based on his observations, experience, and training, the police officer had a "reasonable articulable suspicion" that the defendant had engaged in a drug transaction. *Id.* at ¶ 11. We further concluded that the officer's warrantless entry into the defendant's home did not violate the Fourth Amendment. First, the officer had reasonable suspicion to conduct a *Terry* stop. *Id.* at ¶ 17-18. Second, the defendant's flight from the police escalated the officer's reasonable suspicion into probable cause for arrest. *Id.* at ¶ 23.

**{¶ 43}** In the case before us, Detective Osborne stated that, before he became a member of the drug unit, he had been involved in drug arrests as a patrolman, and Holloway's name had been mentioned. In addition, after becoming part of the drug unit, Osborne had specifically received information that Holloway was selling narcotics. Transcript of Suppression Hearing, at p. 8. Based on Osborne's experience, he believed that he had seen Holloway engaged in a hand-to-hand drug transaction, and Osborne exited his vehicle to talk to Holloway. After Osborne identified himself as a police officer, Holloway fled into the house. Under these circumstances, and as in *Etherington*, Osborne had probable cause to pursue Holloway and to enter onto the curtilage, where he saw Holloway with a purple bag.

**{¶ 44}** Because Holloway did have the right to enter the curtilage, his observations while there did not violate Holloway's Fourth Amendment rights, and should not have been suppressed. Accordingly, Holloway's Third Assignment of Error is overruled.

## C. Alleged Ineffective Assistance of Counsel

{¶ 45} Under this assignment of error, Holloway contends that trial counsel rendered ineffective assistance of counsel by failing to call a known witness for the suppression hearing. Holloway bases this argument on the fact that his sole witness at trial, Ashley Preston, testified that she was present in 17 North Shaffer when Detective Osborne entered. According to Ashley, she was sitting with her father on the couch and did not recall the police knocking on the door. Instead, the police barged through the door. Ashley also said she did not give the police permission or consent to search, nor did she recall her father giving permission.

{¶ 46} Holloway contends that trial counsel "most assuredly" knew of this information, and his failure to present this information at the suppression hearing was prejudicial. In response, the State argues that Holloway's argument is speculative, because he failed to point to anything in the record showing that, at the time of the suppression hearing, Holloway's counsel knew what Ashley's testimony would be, or that she was available to testify at the hearing.

{¶ 47} "Reversal of a conviction on the grounds of ineffective assistance of counsel requires a showing, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive defendant of a fair trial." *State v. Treesh*, 90 Ohio St.3d 460, 489, 739 N.E.2d 749 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538

N.E.2d 373 (1989), paragraph three of the syllabus.

{¶ 48} Generally, the decision of trial counsel "whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *Treesh* at 490. *Accord State v. Martin*, 2d Dist. Montgomery No. 20610, 2005-Ohio-1369, ¶ 19. Furthermore, "[d]ebatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).

{¶ 49} In September 2016, Holloway's attorney filed a witness list that included Ashley Preston, with a listed address of 19 North Shaffer St. *See* Doc. #19. The list did not indicate the substance of any anticipated testimony. As the State notes, there is also no indication in the record that trial counsel knew of the content of Ashley's testimony at the time of the suppression hearing, or, more importantly, whether she was available to testify. In fact, Ashley stated at trial that she had originally lived at 19 North Shaffer, but had moved into 17 North Shaffer at some point before the incident. Transcript of Trial Proceedings, Vol. II, at pp. 272-273. Ashley also said that she had moved out of 17 North Shaffer and had lived at another address for over a year before she testified. *Id.* at 283.

{¶ 50} In view of the fact that new counsel represented Holloway at trial, and that the suppression hearing was held about two months before Ashley testified, i.e., when she lived at a new address, there is no indication that former defense counsel would have been able to locate Ashley and secure her testimony at the suppression hearing. As a final matter, even if counsel had been able to produce Ashley for the suppression hearing, whether she would have testified as she did at trial is a matter of speculation. Notably, we are limited to the evidence in the record.

{¶ 51} Based on the preceding discussion, we cannot find that trial counsel was ineffective in failing to call Ashley as a witness at the suppression hearing. Accordingly, the Fourth Assignment of Error is overruled.

IV.  Denial of Motion for Acquittal and Manifest Weight

{¶ 52} Because the Fifth and Sixth Assignments of Error are interrelated, we will discuss them together. Holloway's Fifth Assignment of Error states that:

The Trial Court Erred in Denying Holloway's Crim.R. 29 Motion for Acquittal as the Evidence Presented Was Insufficient to Conclude that Guilt Had Been Proved Beyond a Reasonable Doubt in Violation of His Rights to Due Process and a Fair Trial Under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

{¶ 53} The Sixth Assignment of Error is as follows:

The Trial Court Erred in Entering a Finding of Guilty Because Such Verdict Was Against the Manifest Weight of the Evidence. Fifth and Fourteenth Amendments, United States Constitution, and Article I, Section 14 of the Ohio Constitution.

{¶ 54} Holloway's argument under these assignments of error relates primarily to the six counts of which he was convicted that involved trafficking. According to Holloway, the State's proof was deficient because the State relied on the testimony of only one detective, even though other officers were at the scene. Holloway also points to the fact that there was no DNA evidence, no surveillance log to substantiate Detective Osborne's

claim that he had been surveilling Holloway, no pictures of the children in the vicinity (which involved an increase in the degree of the trafficking charges), and no signed written form by Preston for consent to search.

{¶ 55} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In such situations, we apply the test from *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states that:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

(Citation omitted). *Id.* at paragraph two of the syllabus.

{¶ 56} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12, citing *State v. Hufnagle*, 2d Dist. Montgomery No. 15563, 1996 WL 501470 (Sept. 6, 1996).

{¶ 57} In this situation, a court reviews " 'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines

whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *Accord State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193. "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene No. 2013-CA-61, 2014-Ohio-3432, ¶ 24, citing *Wilson,* at ¶ 14.

**{¶ 58}** While " 'sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency.' " *State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.), quoting *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. As a result, " 'a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.' " *Id.*, quoting *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

**{¶ 59}** A further principle is that appellate courts should cautiously exercise their discretionary power of finding that judgments are against the manifest weight of the evidence. This is because factfinders see and hear the witnesses and have unique competence to decide whether, and to what extent, to credit their testimony. As a consequence, we give substantial deference to credibility decisions of factfinders. *See Winbush* at ¶ 59, citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL

476684, *4 (Aug. 22, 1997).

{¶ 60} On the other hand, appellate judges are at least equally qualified, due to their reason and experience, to express opinions on which of the competing inferences suggested by the evidence should be preferred. For this reason, "we defer more to decisions on what testimony should be credited, than we do to decisions on the logical force to be assigned to inferences suggested by evidence, no matter how persuasive the evidence may be." *State v. Brooks*, 2d Dist. Montgomery No. 21531, 2007-Ohio-1029, ¶ 28, citing *Lawson* at *4.

{¶ 61} In considering the evidence, we will focus on the trafficking offenses, since this is what Holloway has done. Holloway was charged with having violated R.C. 2925.03(A)(2) (a trafficking offense), which provides that: "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

{¶ 62} Under R.C. 2925.03(C)(1), where certain Schedule I or II drugs are involved, the offense is classified as aggravated trafficking, and under R.C. 2925.03(C)(1)(b), the degree of felony is increased if the offense is committed in the vicinity of a school or a juvenile. Under R.C. 2925.01(BB), "[a]n offense is 'committed in the vicinity of a juvenile' if the offender commits the offense within one hundred feet of a juvenile or within the view of a juvenile, regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the

commission of the offense."

**{¶ 63}** As was noted, Detective Osborne testified that he was working in the Springfield drug unit and had been investigating Holloway during the early months of 2016. On the day of the arrest, Osborne was surveilling Holloway and had been doing drive-bys of the residence at 17 North Shaffer Street. During a drive-by, he saw Holloway engage in what, based on Osborne's training and experience, was a hand-to-hand drug transaction.

**{¶ 64}** Osborne also saw Holloway inside the house with a purple bag, which was later found to contain a large amount of methamphetamine, 50 Valium tablets, and other illegal drugs. Among the drugs were three separate types of Schedule II drugs (methamphetamine, Hydrocodone, and Oxycodone), Trial Transcript, Vol. II, at pp. 232-233, 238, and 239), as well as three types of lower-rated drugs (Valium, Xanax and Subutex) (Schedules III and IV drugs). Holloway also had nearly $4,000 on his person. Osborne additionally testified that he saw children within 100 feet of Holloway. *Id.* at p. 142.

**{¶ 65}** This evidence satisfied the above statutory requirements for aggravated trafficking and trafficking in the vicinity of children. The only contradictory evidence came from Holloway's witness, who stated that she did not see Holloway selling drugs "out of" the residence. The jury clearly did not believe her, and as noted, we give substantial deference to a factfinder's credibility decisions.

**{¶ 66}** As to the surveillance log, Holloway's counsel inquired about this on cross-examination. Detective Osborne stated that the log was in his office, and counsel asked him to produce it. Trial Transcript, Vol. II, at pp. 185-186. Thereafter, defense counsel

did not choose to recall Osborne and present testimony about the log.

**{¶ 67}** Concerning Holloway's contention about the absence of pictures of children, Osborne testified that while he observed the drug transaction, children were within 100 feet of Holloway. Trial Transcript, Vol. II, pp. 142 and 222. It is true that the State did not provide pictures of the children or their names. However, State's Ex. 11, taken the day of the incident, shows children's toys and a tricycle in the front yard of 17 North Shaffer. Again, the jury was in a position to assess the credibility of the witnesses and to give the testimony whatever weight the jury found appropriate. The same is true of the lack of a written consent form for the search. Osborne did not obtain written consent, but written consent, while preferable particularly as to defendants, is not required. *E.g., State v. Mayberry*, 2014-Ohio-4706, 22 N.E.3d 222, ¶ 17 (2d Dist.) (written consent is not required after oral consent has been given, but does reveal strong evidence of defendant's willingness to permit search).

**{¶ 68}** Finally, concerning the purple bag and its contents, Osborne testified that he saw the bag in Holloway's hands, and that he saw Holloway make a motion as if he were crouching down. When Holloway came out of the house, he no longer had the bag. Notably, possession of drugs may be either constructive or actual. *State v. Williamson*, 2d Dist. Montgomery No. 27147, 2017-Ohio-7098, ¶ 56. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." (Citation omitted.) *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus.

**{¶ 69}** Courts look at all the available attendant facts and circumstances to decide if an individual knowingly possessed controlled substances. *State v. Teamer*, 82 Ohio

St.3d 490, 492, 696 N.E.2d 1049 (1998). Moreover, circumstantial evidence can be used. This type of evidence has the same probative value as direct evidence. *State v. Flores-Lopez*, 2017-Ohio-690, 85 N.E.3d 534, ¶ 54 (2d Dist.), citing *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph one of the syllabus.

**{¶ 70}** Here, Detective Osborne directly saw Holloway with the purple bag, and later found the bag in the area where he saw Holloway crouching. In addition, the shower was wet, but only the bottom of the bag was wet. Under the facts and circumstances, a reasonable juror could conclude that Holloway constructively possessed the drugs. *See Flores-Lopez* at ¶ 55.

**{¶ 71}** The State was also not required to use DNA evidence, as the eyewitness testimony was sufficient to establish that Holloway had possession of the bag of drugs. Nonetheless, the State did test some items in the bag for latent fingerprints. However, the fingerprint evidence was insufficient for reliable identification. Transcript of Trial Proceedings, Vol. II, at pp. 255-258. The State's expert also explained why fingerprints are not left on every item a person touches. *Id.* at pp. 256 and 258.

**{¶ 72}** Based on the preceding discussion, the jury's verdict was not against the weight of the evidence, and the trial court did not err in refusing to grant Holloway's Crim. R. 29(A) motion for acquittal. Accordingly, the Fifth and Sixth Assignments of Error are overruled.

## V. Failure to Merge Sentences

**{¶ 73}** Holloway's Seventh Assignment of Error states that:

The Trial Court Erred in Imposing a Sentence of Eight Years

Mandatory Imprisonment Plus Fifty-Four Months Consecutive in Violation of the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

## A.   Allied Offenses

**{¶ 74}** Under this assignment of error, Holloway first contends that since the drugs were all in the same bag, the guilty verdicts were for allied offenses of similar import, and he should have been sentenced for only one count.   Relying on *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, Holloway argues that the six trafficking convictions (counts one, three, five, seven, nine, and 11) should have been merged.

**{¶ 75}** In replying to this argument, the State notes that Holloway failed to object at the sentencing hearing, and that we can review only for plain error.   The State further argues that after the *Ruff* decision, Ohio courts have continued to reject Holloway's argument.

**{¶ 76}** As to the State's first point, we agree that Holloway failed to object to the court's failure to merge the trafficking convictions.   Sentencing courts have a mandatory, not a discretionary, duty to merge allied offenses.   *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 27-28.   Nonetheless, the Supreme Court of Ohio has also held that:

> An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice.

Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

*State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. The court further commented that "when an error in failing to merge allied offenses is obvious, it rises to plain error." *Id.* at ¶ 14.

{¶ 77} R.C. 2941.25, the allied offenses statute, provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 78} "As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and

(3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 31.

**{¶ 79}** After consideration, we conclude that the drug offenses were not allied offenses. Before *Ruff* was decided, we held that "the fact each violation of R.C. 2925.11 requires proof of the identity of a different drug that was possessed demonstrates 'that the legislature intended the possession of the different drug groups to constitute different offenses.' " *State v. Huber*, 2d Dist. Clark No. 2010-CA-83, 2011-Ohio-6175, ¶ 7, quoting *State v. Delfino*, 22 Ohio St.3d 270, 274, 490 N.E.2d 884 (1986). Under the test in *Ruff*, this means that the offenses are dissimilar in import or significance.

**{¶ 80}** In an opinion decided after *Ruff*, we continued to follow *Huber*. *See State v. Pendleton*, 2d Dist. Clark No. 2017-CA-17, 2018-Ohio-3199. *Pendleton* involved an indictment that included three counts of trafficking in drugs (heroin, cocaine, and fentanyl), and three counts of possession. After the defendant was found guilty, the trial court merged the trafficking and respective possession counts, and sentenced the defendant to separate terms of imprisonment on the three trafficking counts. *Id.* at ¶ 10-11.

**{¶ 81}** On appeal, Pendleton argued that the trial court should have merged four of his convictions because the heroin and fentanyl were based on the same two quantities of mixed substances containing both heroin and fentanyl. *Id.* at ¶ 27. We disagreed, however. We first cited decisions, including *Huber,* that had been rendered before and after *Ruff*. *Id.* at ¶ 29. We then noted that the conviction for trafficking in heroin required proof under R.C. 2925.03(C)(6), while the fentanyl conviction required proof under

2925.03(C)(1). Due to the requirement of different facts under different subsections, we concluded that the convictions should not be merged. *Id.* at ¶ 32.

**{¶ 82}** We did "question the propriety of characterizing the same 133.62 grams of powder as 133.62 grams of heroin mixed with filler for purposes of determining the quantity of heroin involved, and simultaneously, as 133.62 grams of fentanyl mixed with filler for purposes of determining the quantity of fentanyl involved." *Id.* at ¶ 58. However, the majority concluded that we were required to affirm the convictions "in the absence of a clear statutory mandate to the contrary, or any authority in the federal constitution or the Ohio Constitution." *Id.* at ¶ 59.

**{¶ 83}** The dissent concluded that the separate trafficking convictions were "allied offenses of similar import due to the State's use of the same evidence – specifically, *both* drugs and the same filler – to elevate the offense levels for both offenses." (Emphasis sic.) *Pendleton*, 2d Dist. Clark No. 2017-CA-17, 2018-Ohio-3199, at ¶ 73. (Froelich, J., concurring in part and dissenting in part.) Even the dissent recognized, however, "that the simultaneous possession of different types of drugs constitutes separate offenses that do not merge as allied offenses of similar import." *Id.* at ¶ 68.[1]

**{¶ 84}** In view of our prior authority in *Huber* and *Pendleton*, we conclude that this is not the exceptional case in which we should recognize plain error. In fact, there was no error, as the trial court was correct in failing to merge the trafficking convictions. The drugs involved were all different; in addition, three (methamphetamine, Oxycodone, and Hydrocodone) were Schedule II drugs, one (Subutex) was a Schedule III drug, and two

---

[1] Pendleton has appealed to the Supreme Court of Ohio. *See State v. Pendleton*, 2018-1348, filed on September 24, 2018.

(Valium and Xanax) were Schedule IV drugs. Different statutory sections were also involved, i.e., R.C. 2925.11(C)(1) and R.C. 2925.11(C)(8).

{¶ 85} After *Ruff*, other Ohio appellate districts have continued to hold that offenses of possession of or trafficking in different types of drugs constitute separate offenses and do not merge. *See State v. Howard,* 2017-Ohio-9392, 103 N.E.3d 108, ¶ 65 (4th Dist.); *State v. Rice*, 5th Dist. Licking No. 16-CA-87, 2017-Ohio-1504, ¶ 12-13; *State v. Ratliff*, 6th Dist. Lucas No. L-16-1187, 2017-Ohio-2816, ¶ 11-14; *State v. Hunt*, 7th Dist. Jefferson No. 17 JE 0012, 2018-Ohio-815, ¶ 17; *State v. Perry*, 8th Dist. Cuyahoga No. 105501, 2018-Ohio-487, ¶ 32; *State v. Dodson*, 9th Dist. Medina No. 16CA0020-M, 2017-Ohio-350, ¶ 13; *State v. Woodard*, 12th Dist. Warren No. CA2016-09-084, 2017-Ohio-6941, ¶ 34. Holloway has not provided us with contrary authority.

{¶ 86} Based on the preceding discussion, the trial court did not err in failing to merge the six trafficking convictions.


B.   Sentencing Review

{¶ 87} Holloway's second argument under this assignment of error is that his sentence should be decreased because the trial court failed to properly apply R.C. 2929.12(C)(3).

{¶ 88} In reviewing sentences, we are constrained by the standard of review in R.C. 2953.08(G). *State v. Withrow*, 2016-Ohio-2884, 64 N.E.3d 553, ¶ 20 (2d Dist.). This subsection of R.C. 2953.08 provides that, after reviewing the record, including the trial court's findings:

The appellate court may increase, reduce, or otherwise modify a

sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929. 20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 89} Trial courts have " 'full discretion to impose any sentence within the authorized statutory range," and do not have to "make any findings or give * * * reasons for imposing maximum or more than minimum sentences.' " *State v. Nelson*, 2d Dist. Montgomery No. 25026, 2012-Ohio-5797, ¶ 62. However, "in exercising its discretion, the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender." *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 90} As was noted, Holloway argues that the trial court erred in applying R.C. 2929.12(C)(3). In relevant part, R.C. 2929.12(C) provides that "[t]he sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less

serious than conduct normally constituting the offense: * * * (3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property."

**{¶ 91}** At the sentencing hearing, the trial court stated that "[i]n today's society how somebody can be dealing in these controlled substances and not realize the risk of physical harm to persons is not clear to this Court." Transcript of Proceedings (Disposition), p. 14. According to Holloway, the court misapplied this factor because there was no evidence of harm. In addition, Holloway notes that drug dealers do not want to harm their clients; "they want their clients to live and be repeat customers so as to increase their profits." Appellant's Brief, p. 23.

**{¶ 92}** While there was no "direct" evidence of harm, we reject Holloway's argument. " 'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

**{¶ 93}** In *State v. Breneman*, 2d Dist. Champaign No. 2013-CA-57, 2014-Ohio-4700, the trial court rejected a defendant's argument that his conduct was less serious under R.C. 2929.12(C)(3), because when he sold drugs, he did not " 'cause or expect to cause physical harm to any person * * *.' " *Id.* at ¶ 11, quoting R.C. 2901.01(A)(3). In finding that the trial court correctly considered the sentencing factors, we noted that the defendant "himself acknowledged that his conduct in selling drugs was harmful, and it defies logic to conclude that one selling drugs would not expect those drugs to cause some type of physiological impairment in a user. In other words, as the court determined, the factor set forth in R.C. 2929.12(C)(3) did not lessen the gravity of [the defendant's] offense." *Id.* The same reasoning applies here.

**{¶ 94}** Holloway also mentioned consecutive sentences in his assignment of error,

but he did not make any specific argument in this context. We have reviewed the sentencing hearing; the trial court made the appropriate findings for imposing consecutive sentences under R.C. 2929.14(C)(4), and the sentences are not contrary to law "when the trial court makes the requisite statutory findings." *State v. Ropp*, 2d Dist. Champaign No. 2017-CA-32, 2018-Ohio-3815, ¶ 19; s*ee also* Transcript of Proceedings (Disposition), at p. 14.

**{¶ 95}** In addition, we have reviewed the presentence investigation report. Holloway was 37 years old at the time of the report and had a significant criminal record, beginning with many juvenile court felony charges and three or more adult felony convictions before the current case. Holloway's risk level was also high. Despite having been incarcerated (according to Holloway's own account), for 16 years of his life, including time at the Department of Youth Services, Holloway has not been rehabilitated successfully. Holloway also showed no remorse for his crime; at sentencing, he maintained his innocence of the charges. This is inconsistent with his claim that as a "drug dealer," he did not intend to harm anyone because he wanted his clients to continue to buy drugs.

**{¶ 96}** Accordingly, the trial court did not err in sentencing Holloway. Based on the preceding discussion, the Seventh Assignment of Error is overruled.

## VI. Conclusion

**{¶ 97}** All of Holloway's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies sent to:

Andrew P. Pickering
Steven H. Eckstein
Hon. Richard J. O'Neill